MARCH et al. v. ROMARE et al.

(Circuit Court of Appeals, Fifth Circuit. June 2, 1902.)

No. 1,155.

1. TRUSTS—POWER TO REMOVE TRUSTEES—SUPERVISORY POWER OF COURT.
    Where, by the terms of a trust deed securing bonds issued by a corporation, unrestricted power to remove the trustees named and to appoint others was vested in the majority of the bondholders, the power to determine whether there is good and sufficient cause for such removal and substitution is also vested in them, subject only to the restraining power of a court of equity against its abuse; and unless such an abuse of power appears, or that the action of the majority will be so seriously prejudicial to the interests of the minority as to require equitable relief, the court cannot substitute its own judgment for that of the majority of the bondholders, by refusing to recognize new trustees whom they have substituted for those originally appointed.

    Shelby, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

Jno. B. Knox and J. K. Dixon, for appellants.
J. J. Willett and B. F. Abbott, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. This is an appeal from a final decree sustaining demurrers to and dismissing an entitled original bill in the nature of a supplemental bill brought by the appellants against the appellees. The substance and allegations of the dismissed bill are fully and fairly stated in an opinion filed by the learned judge of the circuit court, and report-

ed in March v. Romare (C. C.) 114 Fed. 201, 202. In his opinion the judge below says:

"There is no rule of law that cestuis que trustent may not remove and appoint trustees, in the exercise of the power given them by the instrument creating the trust, because prior to the exercise of the power the trustee has filed a bill, which is still pending, concerning it, or the court in any other way has undertaken jurisdiction of the trust. The exercise of such a power will be permitted or disallowed at any time as may appear to the court for the best interests of the cestuis que trustent. It is not the law, however, when the power is given in broad terms, without requiring a specification of any cause for its exercise, that the decision of a majority of the donees of the appointing and removing power cannot be questioned by the court, save in cases of fraud, oppression, or bad faith. The controlling question in every case is whether a change promotes the execution of the trust. If the court should be of opinion that the substitution is not for the benefit of the trust, it will not sanction a removal, though made in good faith and without intention to oppress. The only case, perhaps, in which the court would feel impelled to accept without question a decision appointing and removing trustees, would be where the power is lodged in the whole body of cestuis que trustent, and is unanimously exercised by them. This would be only allowing all the owners of the trust property to deal with it as they thought best. But where the power is committed to the majority of the cestuis que trustent, and the minority oppose the removal, the court should always inquire not only whether there was bad faith or oppression, but whether sanctioning the change might be detrimental to the interest of any of the cestuis que trustent. This duty becomes imperative when the majority of the cestuis que trustent remove a trustee who is proceeding in the discharge of a plain duty which the minority have a right to demand at his hands. In this case the minority bondholders, after default, had the unquestioned and clear legal right to demand of the trustee, upon giving him proper indemnity, to proceed to foreclose. He had not a particle of discretion. He would have been derelict in duty if he refrained from acting because a majority of the cestuis que trustent opposed foreclosure. The majority bondholders have no legal or moral cause of complaint against the trustee for so acting. It is not to be presumed, in a matter of this importance, that the trustee acted otherwise than on the advice of counsel in applying for the appointment of a receiver. Indeed, the fourth article of the trust deed requires the trustee, in event of default, upon the requisition in writing of one-fourth of the bondholders, to proceed to exercise their rights, 'either by taking possession of the property under the powers granted in other articles, or by suit or suits in equity or at law in aid of the execution of such powers, or otherwise, as the trustee, being advised by counsel learned in the law, shall deem most effectual.'"

With some slight exceptions, we fully agree with our learned Brother in these views, but we do not agree in the application made of them to the case in hand. In the record we find no fact nor circumstance which will warrant the assumption or finding that the action of the majority of the bondholders in appointing trustees was an abuse of their power, or seriously injurious to any bondholder. The case does show that J. H. Porter, one of the two original trustees, died in 1897, and that the surviving trustee was taking action to foreclose the deed of trust, lawful and proper in all respects, perhaps, but without consultation with the large majority of the bondholders. The conduct and proceedings of the surviving trustee in suing for foreclosure and petitioning for a receiver seem to have been largely based on the theory that in considering the absolute rights and interests of the minority bondholders the rights and wishes of the majority were unimportant. We take the law to be that, as the unrestricted power to re-

move the trustees and appoint other trustees was vested in the majority of the bondholders, the power to determine whether there was good and sufficient cause for such removal was necessarily in them, also, subject only to the restraining power of a court of equity against the abuse of it. See May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179.

As we find nothing in this record to show that in the action of the majority of the bondholders in filling the vacancy resulting from the death of Porter, and in removing Paul Romare as surviving trustee, and in choosing the complainants below (appellants here) as trustees, was there any abuse of the power so unequivocally and clearly granted in the eighth article of the deed of trust, we conclude that the demurrers to the bill should have been overruled. If the action of the majority of the bondholders is an abuse of the trust, or in any serious degree prejudicial to the interests of any bondholder, so that a court of equity should interfere against the exercise of the absolute right conferred upon the majority of bondholders, let the removed trustee or any bondholder in interest answer the bill, to show the same.

The decree of the circuit court is reversed, and the cause is remanded, with instructions to overrule the demurrers to the bill, and otherwise proceed as equity and good conscience may require.

SHELBY, Circuit Judge, dissents.