LAND TITLE & TRUST CO. v. TATNALL et al.

(Circuit Court of Appeals, Third Circuit. September 8, 1904.)

Nos. 45, 47.

1. APPEALABLE ORDERS—DENYING LEAVE TO INTERVENE.

An order denying the petition of a bondholder for leave to intervene in a foreclosure suit brought by the mortgage trustee as representing all the bondholders *held* discretionary, and not appealable. Land Title & Trust Co. v. Asphalt Co. of America (C. C. A.) 127 Fed. 1, followed.

2. CORPORATIONS—SUIT BY TRUSTEE FOR BONDHOLDERS—DISCRETION OF COURT AS TO MATTERS LITIGATED.

A court of equity in a suit by a trustee for bondholders of a corporation to obtain a sale of securities pledged with it for the benefit of the bondholders is not required, at the instance of an intervening bondholder, to direct the adjustment by way of set-off in the course of distribution of the fund realized of unliquidated demands against certain of the bondholders on account of unpaid stock subscriptions and other alleged liabilities growing out of the promotion of the corporation, but may properly leave such matters to be liquidated in independent suits, both because such is the more orderly course of procedure and because general creditors of the corporation as well as the bondholders are entitled to share in the proceeds of such recoveries.

Appeal from the Circuit Court of the United States for the District of New Jersey.

John Douglass Brown, for petitioner.

Julien T. Davies, John G. Johnson, and A. H. Wintersteen, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. These are two appeals by William C. Bullitt from decrees of the Circuit Court of the United States for the District of New Jersey entered, respectively, on July 6, 1903, and January 8, 1904, in the consolidated cause in equity of the Land Title & Trust Company v. Henry Tatnall, Receiver of the Asphalt Company of America, and others, denying the appellant's petitions for leave to intervene in the cause and for other relief. The appellant is the holder partly in his own right and partly in a representative capacity of certain collateral gold certificates issued by the Land Title & Trust Company under an agreement between that company and the Asphalt Company of America, dated July 15, 1899, whereby the latter company agreed to make certain payments to the Land Title & Trust Company, and as security for such payments to deposit with that company certain stocks and bonds, the holders of the said certificates being entitled to receive from the Land Title & Trust Company, out of the moneys so to be paid to it by the Asphalt Company, certain specified sums at designated times. Upon the appeals of Harry C. Spinks, which we recently heard and disposed of (127 Fed. 1), we had before us the above-mentioned agreement of July 15, 1899, and the affiliated agreement of December 31, 1900, for the further security of the holders of the certificates, and we then had occasion to consider the relation between the certificate holders and the Asphalt Company of Ameri-

132 F.—20

ca. The pertinent facts are set forth with much fullness, and the whole subject is discussed, in the opinion of this court delivered by Judge Gray in that case. Land Title & Trust Co. v. Asphalt Co. of America, 127 Fed. 1. We there determined that these certificate holders were not creditors of the Asphalt Company of America, and that they were represented in this litigation by their trustee, the Land Title & Trust Company. The views of this court are thus stated in that opinion:

"The appellant (Spinks) is the owner of 133 of the collateral gold certificates issued by the Land Title & Trust Company under the agreement of July 15, 1899. The total amount outstanding of said certificates, as found by the master appointed by the court, and by the court in its decree of April 3, 1903, was $29,830,754.57. About 2,000 persons hold these certificates. It was not contemplated by the court, nor necessary, that the receivers should have presented to them for allowance certificates in the hands of individual holders, as the decree itself fixed the aggregate amount of them outstanding, and made it unnecessary for holders to prove their individual claims. The Land Title & Trust Company was not merely a trustee of property pledged or mortgaged to it, but was also the creditor of the Asphalt Company of America. The Asphalt Company of America acknowledged the sum total of its indebtedness to the said the Land Title & Trust Company, and conveyed to it its property and effects in pledge to secure the same, the trustee issuing the gold certificates to the various holders to the aggregate amount already stated, and making them its cestui que trustent for the payment of the interest and principal, when received from the debtor company. It was, therefore, the Land Title & Trust Company, as trustee, which was entitled, as creditor of the insolvent company, to prove the aggregate debt, including, of course, that part of it represented by the certificate held by the appellant. The decree of the court of April 3, 1903, fixed the status of the holders of collateral gold certificates as holders thereof in accordance with the agreement of July 15, 1899, between the Land Title & Trust Company and the Asphalt Company of America, to the amount in par value of $29,430,754.57, and the holders of such certificates were therefore adjudicated to be entitled, through their trustee, as valid claimants secured by said agreement.

"The contention of the appellant that the direction to the receiver to receive proof of all debts and obligations of the Asphalt Company of America entitled him to present his claim as a holder of collateral gold certificates cannot be supported. The receiver allowed and reported upon no claims of holders of collateral gold certificates, and it does not appear that any application, other than that of the appellant, was made to him for that purpose. No good reason was shown why appellant's case should be segregated from that of 2,000 other holders, or that his security as such holder was in any way affected to his detriment by the decision of the receivers. The appellant became the owner of his gold certificates, subject to any limitations imposed by the form in which they were made; that is to say, the obligations entered by the Asphalt Company of America in and by said agreement of pledge or by the said trustee. The company covenants in said agreement to pay to the trustee the moneys necessary to pay interest on the certificates as they fall due, and also certain sinking fund amounts, and it is the trustee only who has, by the form of such certificate, direct obligation to the certificate holder, and in the said agreement of July 15, 1899, it is expressly provided that 'any proceedings to enforce any covenant of the company herein contained by legal proceedings shall be in the name of the trustee for the benefit of all the holders of the certificates outstanding.'" 127 Fed. 16, 17.

In conformity with the foregoing views, and upon great consideration, we held that the appellant, Spinks, was not entitled to intervene in this litigation by reason of his holding collateral gold certificates issued under this agreement of July 15, 1899, and that the court below rightly denied his petitions for intervention in the cause, although, besides be-

ing a holder of certificates, he was also a stockholder of the asphalt company.

Upon the appeals of Spinks we further held that the orders denying his petition for intervention were not appealable. Speaking for this court, Judge Gray there said:

"Such orders are not final decisions, in the sense of the statute, and are within the discretion of the court making them, unless it shall affirmatively appear that the petition of intervention was for the purpose of enforcing an individual right of the petitioner, for the assertion of which there is no other remedy, and which will be entirely lost if intervention is denied. If, for instance, a fund is to be distributed by the court in a suit then before it, the denial of a petition to intervene of one who claims the right to participate in the distribution by reason of a title distinct and apart from all other individuals or classes to be affected by the decree would be a final decree as to such petitioner, for the reasons that his claim of right would be finally disposed of and lost by such denial. The petition to intervene in such case is of right, and not addressed merely to the discretion of the court.

"The general rule, however, is as stated by the Circuit Court of Appeals in Hamlin v. Toledo, St. L. & K. C. R. R. Co., 78 Fed. 665, 24 C. C. A. 272, 36 L. R. A. 826: 'The allowance or denial of the application of a stranger to be admitted as a party defendant to a pending suit in equity rests in the sound discretion of the chancellor. The denial of such an application is not such a final decree as is the subject of appeal. * * * Such an application is a mere motion in the case, made by one not a party, and is not of itself an independent suit in equity appealable here.' Ex parte Cutting, 94 U. S. 14, 22, 24 L. Ed. 49.

"The application to intervene in both the first and third appeals was broadly upon the ground that the party by whom the interests of the intervener should be represented (in the one case the Land Title & Trust Company, trustee, and in the other the receivers) was not representing such interests properly. No individual or separate interest of the petitioner, which could not otherwise be adjudicated at all, and would therefore be lost if intervention were denied, was presented in the court below in either of the petitions which are subjects of the first and third appeals. If the trustee and the receivers act honestly and in good faith, the rights of the appellant are protected. The trustee has important interests committed to him by his cestuis que trustent in the litigation before the court, and the court was right; both as to the trustee and the receivers, in exercising its discretion to protect them from interference in the carrying on of the litigation and the administration of the funds in hand, as attempted by the appellant's petitions for intervention. If the trustee had acted in bad faith, or fraudulently, it was open to the appellant to proceed by original bill, and, if the receivers have been guilty of malfeasance in office, the proper remedy is an application to the court below by the appellant or other party in interest for their removal and the substitution of others." 127 Fed. 21, 22.

The views we thus expressed in dismissing the appeals of Spinks (and from which we see no reason to depart) are applicable in full force to the case now before us, and we think that they are decisive against the present appellant, William C. Bullitt. We might then well end this discussion here. We have, however, attentively examined the grounds of complaint urged by this appellant against the proceedings in the court below, and we are obliged to say that we do not find those complaints, or any of them, to be well founded. The appellant has not disclosed any specific breach of trust by the Land Title & Trust Company, or shown any lack of good faith on the part of the receiver. The appellant's principal contention is that certain claims against promoters and former stockholders of the Asphalt Company of America should have been adjusted by way of set-off in the course of distribu-

tion of the fund realized by the Land Title & Trust Company in the foreclosure sale of the pledged assets, instead of being prosecuted in independent suits by the receiver. The so-called foreclosure suit was a proceeding by the trustee the Land Title & Trust Company to have the court which, under the original bill, had appointed a receiver for the Asphalt Company of America, decree the sale of the assets pledged under the agreement of July 15, 1899, and apply the proceeds to the lien held by the trustee. The subsequent proceedings of the court—the reference to a master, order of sale and confirmation thereof, and order of distribution—were orderly steps in the due administration of the trust fund. In all these proceedings the trustee represented the whole body of certificate holders, including, of course, this appellant. The agreement securing the certificates provided that: "All collateral gold certificates executed and delivered by the trustee in accordance with the provisions of this agreement shall be of like status as if all were issued for one consideration, without any preference or priority of one of said collateral gold certificates over another or others." The decree fixing the amount of the outstanding certificates and the decree of distribution were in strict conformity with the terms of the pledge. All the certificates included in said decrees were genuine, and all were executed and delivered in accordance with the provisions of the agreement. In this regard there seems to have been no dispute. The only objection to the distribution urged by the appellant is that alleged claims against such of the certificate holders as were promoters or former stockholders of the Asphalt Company were not adjusted by way of set-off. But, aside from the confusion and delays incident to that course of procedure, there were, it seems to us, unanswerable objections thereto. Some of these we will briefly notice. The alleged counterclaims were unliquidated and inchoate. The liability on stock was not due, for there had been no call by the directors of the company, nor any judicial ascertainment of the amount of the deficiency. Moreover, the general creditors of the company were entitled to participate in unpaid stock subscriptions, and also in any fund arising from liability of promoters. But, manifestly, by the course proposed by the appellant the general creditors would have been excluded in whole or in part from participation in these assets, for the amount of the set-offs established by the proposed method of procedure would have inured in the distribution of this fund to the certificate holders who were not subject to set-off. We think that the court pursued the proper course in directing that the claims against promoters and stockholders should be prosecuted by the receiver by independent actions. It does not appear to us that this method of procedure was at all detrimental to the appellant.

This record discloses that in due time the court below made appropriate orders authorizing and directing the receiver to proceed by suit to enforce the alleged liabilities of promoters and stockholders of the Asphalt Company of America. On the same day the appellant's first petition for intervention was denied the court below made the following order:

"And now, July 6, 1903, the petition and report of Henry Tatnall, receiver of Asphalt Company of America, exhibiting to the court certain facts relat-

ing to the organization and promotion of said corporation, having been filed and considered by the court, it is ordered and decreed that the receiver be, and he is hereby, authorized and directed to take such proceedings by action at law, bill in equity, or otherwise as he may be advised, and as he may determine, against the persons mentioned in said report, or any of them, or against any other persons who may appear to him to be liable, to enforce the liability of such persons for profits made by them in the organization and promotion of Asphalt Company of America."

When this order was made the court publicly stated that if the petitioner, Bullitt (who was then and there represented), thought that others were liable for promoter's profits besides those who, in the opinion of the receiver's counsel, were liable, he was at liberty to use the name of the receiver in suits against such persons upon simply indemnifying the receiver against the costs of such suits. It was to this authorization that the judge below referred in the course of his opinion denying the petition of January 8, 1904, when he said:

"It seems to me, in view of the manner in which that decree of July 6th was entered, and the opportunity given to this petitioner especially to come forward and urge the receiver to bring any suit which he might think was legal and proper to be brought, and his failure to do so, that he is not entitled to have that decree opened for any purpose whatever."

On the 22d of December, 1903, the court made an order for the enforcement of the liability of the stockholders of the Asphalt Company of America, whereby a call was made for payment on each share of stock of said company of the sum necessary to complete the amount of such share, and the receiver was directed to collect the amounts thus called from the stockholders of record. And this order contained the following further provisions:

"Ordered, adjudged, and decreed that, if the said receiver shall find himself unable to collect from any stockholder of the Asphalt Company of America the full amount payable pursuant to said call by reason of the insolvency of such stockholder, the said receiver be directed to inquire into the circumstances under which transfer of stock was made to such stockholder, and, if he be of opinion that the amount payable pursuant to said call and not collectible from the stockholder of record constitutes a liability of any former holder of such stock, and that it will be to the advantage of the estate in the receiver's hands for administration to attempt to collect the deficiency from such former stockholder, then and in such case the receiver is hereby directed to employ such legal process and institute such legal proceedings to that end at the expense of the trust estate, with all the powers aforesaid, as he shall be advised by counsel; and it is further ordered, adjudged, and decreed that, if any person interested in the administration of said estate in the hands of the receiver shall file with the receiver a sworn statement in writing of facts purporting to show the liability under said call of any former stockholder of the Asphalt Company of America named in said statement, with a detailed presentation of the evidence available to substantiate said facts, and the names of the witnesses who will prove said facts, and if the receiver, upon consideration thereof, and of such other information in the premises as he can obtain, shall be of opinion that an attempt to enforce such alleged liability by legal proceedings will not be to the advantage of the estate in his hands for administration, he shall give notice in writing of such determination to the person presenting such statement of facts; and thereafter, notwithstanding such determination, if a satisfactory bond of indemnity with sufficient surety or sureties shall be tendered to the said receiver to protect the estate in his hands for administration against any damage or expense by reason of legal proceedings for the enforcement of such alleged liability, the said receiver is hereby directed to employ such legal process and institute such legal pro-

ceedings at the expense of the trust estate, with all the powers aforesaid, as may be advised by counsel for the enforcement of such alleged liability; the court reserving the right, however, at any time by order, after notice to the receiver and to the person furnishing such bond of indemnity, to prohibit the institution of any such proceeding which shall appear to be oppressive in character, or without probable cause, or from time to time in any case to require additional or other security."

We do not perceive that the orders of July 6 and December 22, 1903, are open to criticism. They seem to us to scrupulously guard the interests of the appellant.

We do not deem it necessary to discuss with particularity all the alleged errors specified by the appellant. We here content ourselves with saying that we are not able to see that the appellant has any just cause of complaint in respect to the proceedings in the court below.

Each of these appeals must be dismissed.