FIDELITY TRUST CO. v. WASHINGTON-OREGON CORPORATION et al.
(KIERNAN et al., Interveners).

(District Court, W. D. Washington, S. D.  October 29, 1914.)

No. 15.

1. CORPORATIONS (§ 661*)—SERVICE OF PROCESS—DESIGNATION OF AGENT.
    Where a trust deed was executed in 1911, appointing a Pennsylvania corporation trustee for bondholders, the trustee was not disqualified to maintain a suit to foreclose the mortgage because of its failure to appoint an agent in Oregon, where property covered was located, as required by Laws Or. 1913, p. 730, § 24; there being nothing in the act indicating legislative intention that it should be retroactive.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536, 2539, 2542, 2543, 2544, 2546, 2563–2567; Dec. Dig. § 661.*]

2. CORPORATIONS (§ 643*)—FOREIGN CORPORATIONS—TRUST COMPANIES—DEPOSITS.
    Laws Or. 1913, p. 730, § 24, provides that in case any foreign corporation whose name contains the word "trust," or whose articles of incorporation empower it to do a trust business, desires to engage in the business of loaning money on mortgage security in the state, it shall file, in addition to its articles of incorporation or association, a resolution of its governing board stating that it will not receive deposits in Oregon or accept from citizens property or money in trust for investment. *Held,* that a foreign trust company named as trustee in a deed of trust on property in Oregon was not disqualified to act by a failure to comply with such act, in the absence of any claim that it had accepted deposits or received from citizens or residents of Oregon property or money in trust for deposit or investment.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2510, 2511, 2536, 2538, 2539, 2541, 2543, 2545, 2546; Dec. Dig. § 643.*]

3. CORPORATIONS (§ 482*)—TRUST DEEDS—FORECLOSURE.
    A trust company, appointed as trustee under a deed of trust securing bonds, providing that a majority in interest of the outstanding bondholders in case of default were entitled to declare the whole amount due and direct foreclosure, was not disqualified to act as trustee because it was named and consented to act with certain bondholders representing a large majority of the outstanding bonds in foreclosure proceedings and contemplating reorganization pursuant to a bondholders' agreement, which provided for the deposit of bonds with the trustee for a greater convenience in conducting the proceedings; the terms of the agreement not being such as to conflict with the duties the trustee owed to the bondholders as such.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

---

.*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

4. CORPORATIONS (§ 479*) — MORTGAGES — BONDHOLDERS' AGREEMENT — CONSTRUCTION.

A bondholders' agreement for reorganization, providing that a depositary shall be bound to exercise only reasonable care in the safe-keeping of the deposited bonds, etc., did not touch the depositary's duties to the bondholders as trustee under the deed of trust.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

5. CORPORATIONS (§ 479*)—DEED OF TRUST — FORECLOSURE — BONDHOLDERS' AGREEMENT.

A provision of a bondholders' agreement that the committee appointed to arrange foreclosure and reorganization assumed no obligation to any bondholder who should not within the period limited deposit his bonds thereunder, or to any other person except holders of certificates of deposit issued in accordance with the terms of the agreement, contemplated only that by the bondholders' agreement no new obligations were assumed or cast on the men composing the committee to any bondholders not depositing their bonds, but did not free the committee of the depositing bondholders, nor the trust company as trustee, of any obligation under the deed of trust, or growing out of it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

6. CORPORATIONS (§ 479*)—TRUST DEED—TRUSTEE—DELEGATION OF DUTIES.

The rule forbidding delegation of authority by a trustee does not forbid the majority of corporate bondholders from delegating to a committee the power to give necessary instructions to the trustee as to the foreclosure of the deed of trust securing the bonds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

7. CORPORATIONS (§ 479*)—DEED OF TRUST — FORECLOSURE — BONDHOLDERS' AGREEMENT.

A bondholders' agreement preliminary to the foreclosure of a corporation's deed of trust authorized the committee to consent to the payment of interest on any bonds, securities, or other obligations against the corporation, and to instruct the trustee or trustees under any agreement under which any of the bonds may have been issued from time to time to sell or refrain from selling any of the property covered by any such mortgages. Held, that such provision constituted a delegation to the committee by the depositing bondholders of the power to consent and instruct for them, and did not bind the trustee, by its consent to act as depositary, to submit to the direction of the committee as to the sale of the property covered by the agreement, or to follow the committee's instructions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

8. CORPORATIONS (§ 478*)—DEED OF TRUST—SALE OF PROPERTY—CONDEMNATION—APPLICATION OF PROCEEDS.

A deed of trust executed by a corporation to secure a bond issue provided that the company, in the absence of default, should be entitled to convey, freed from the deed, all or any of its real estate which should no longer be useful or necessary to its business, the net proceeds to be paid to the trustee and applied, at the election, of the corporation, either to the benefit or extension of the corporation's plants or to the purchase "in the open market" of bonds secured by the deed. The following clause declared that the corporation should have the further right at all times, in the absence of default, to convey, free from the deed, any of its plants or systems, or any property so sold or assigned, in the same manner as set out in the preceding provision, the proceeds to be applied "only to the redemption and cancellation of outstanding bonds." Held, that the first provision should be construed as relating to sales of minor portions of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation's property, and did not relate to the taking by a city in the exercise of its power of eminent domain of an entire water plant or system belonging to the company, which was covered by the second subdivision.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1871; Dec. Dig. § 478.*]

9. CORPORATIONS (§ 479*)—DEED OF TRUST — SALE OF PROPERTY — ACTS OF TRUSTEE.

Where property of a corporation covered by a trust deed was taken by a city in the exercise of its right of eminent domain, and it was doubtful which provision of the trust deed covered the disposition of the proceeds, the trustee would not be held disqualified for a mistake, which was not gross, in determining such question, in the absence of fraud, especially where it acted under the provision affording the bondholders the greatest protection.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

10. CORPORATIONS (§ 479*)—DEED OF TRUST—MISCONDUCT OF TRUSTEE.

An allegation that a trustee under a corporate deed of trust securing bonds used the proceeds of a taking of certain of the corporation's property to purchase bonds from the corporation's trustees, instead of in the open market, or for betterments or extensions as provided in the deed, did not show disqualifying misconduct, in the absence of an allegation that the bonds could have been obtained in the open market, that an excessive price was paid for those purchased, or that any request had been made to the trustee for the proceeds by the mortgagor to be used in betterments or extensions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

11. CORPORATIONS (§ 479*) — TRUST DEED — FORECLOSURE — BONDHOLDERS' AGREEMENT—DEPOSIT—CERTIFICATE.

Where a trust company, which was trustee under a corporation's trust deed securing a bond issue, was also depositary under a bondholders' agreement looking to foreclosure, a certificate issued by it, certifying that the holder was bound by the terms of the agreement and entitled to the advantages accruing to the depositors of bonds thereunder, was not an undertaking by the trust company that the certificate holder should receive the benefits of the bondholders' agreement beyond safe-keeping by the trustee of the deposited bonds and the dealing with them, while so kept, as directed by the bondholders' committee under the agreement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

12. CORPORATIONS (§ 479*)—DEED OF TRUST — FORECLOSURE — BONDHOLDERS' COMMITTEE—DEPOSITARY.

Where a bondholders' agreement, looking to the foreclosure of a corporation's deed of trust securing bonds, provided for the deposit of the bonds with the trustee as a depositary, and that the title to the bonds on deposit should pass to the bondholders' committee, the depositary was only bound to use ordinary care to keep the bonds and deal with them as the committee directed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

13. CORPORATIONS (§ 479*) — MORTGAGES — DEED OF TRUST — BONDHOLDERS' AGREEMENT.

A bondholders' agreement that a trust company, which was trustee under the corporation's deed of trust securing the bonds, should act as depositary in proceedings looking to foreclosure of the deed, and should deal with the bonds in accordance with the directions of the bondholders' com-

---

mittee, did not contemplate any broadening of the duties of the trust company under the deed of trust.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

14. CORPORATIONS (§ 473*)—DEED OF TRUST—FORECLOSURE—BONDHOLDERS' COMMITTEE.

That bondholders were also holders of unpaid stock in the mortgagor corporation did not authorize the setting off of the amounts due on such stock against the bonds held by such delinquent bondholders, on foreclosure of a trust deed securing the bonds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1842–1853, 1855; Dec. Dig. § 473.*]

15. CORPORATIONS (§ 247*)—DEED OF TRUST—PROVISION—SECURITY—UNPAID STOCK.

A trust deed securing corporate bonds provided that no recourse should be had for the payment of principal and interest of the bonds to the stockholders, officers, or trustees of the corporation by virtue of any statute, or by enforcement of any assessment or otherwise, and any and all personal liability of stockholders in respect to the bonds was waived and released by every holder thereof. It also provided that for the debt and bonds secured the corporation was liable in personam, and any deficiency after exhausting the mortgage security might be enforced against the corporation, but not against its officers, trustees, or stockholders individually. *Held*, that by such provisions the bondholders waived their right to have recourse to the stockholders on account of their liability for unpaid stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 983–997; Dec. Dig. § 247.*]

16. CORPORATIONS (§ 482*)—DEED OF TRUST—BONDS—VALIDITY—FORECLOSURE PROCEEDINGS.

An averment of an intervener's bill, in a suit to foreclose a corporate deed of trust, that bonds held by members of a bondholders' committee and other majority bondholders were issued without consideration and were invalid, was insufficient to warrant the stay of foreclosure proceedings until the amount and validity of the outstanding bonds had been determined.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

17. CORPORATIONS (§ 482*)—DEED OF TRUST—TRUSTEE—DISQUALIFICATION.

A bill of intervention, to disqualify the trustee under a corporate deed of trust securing bonds to proceed with foreclosure proceedings, alleging that the trustee's solicitor also represented the mortgagor, one of the members of the bondholders' committee under a second mortgage, the trustee under the second mortgage, a committee of consolidated bondholders under the first mortgage, holders of stock in the mortgagor company, the committee of second mortgaged bondholders, and certain general creditors of the mortgagor, merely showed that the trustee was acting in conjunction with other interested parties, and did not indicate disqualifying misconduct.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

18. CORPORATIONS (§ 482*)—DEED OF TRUST—FORECLOSURE—CONSPIRACY—KEEPING BOOKS OUTSIDE STATE.

An allegation that the books of a corporation have been and were kept outside the state, in violation of statute, did not support an averment that the trustees of the mortgagor company and others, including certain of the bondholders, had conspired to cause the mortgage property to be sold, free from the claims of intervening bondholders and other creditors, for a sum much less than its actual value, and insufficient to pay in full

the claims of the intervening bondholders,·and insufficient to pay any sum to general creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

Suit by the Fidelity Trust Company, as trustee, against the Washington-Oregon Corporation and others, with John Kiernan and others as interveners. On complainant's motion to dismiss the complaint in intervention, or, in the alternative, to strike certain portions of the intervening complaint. Motion to strike granted in part.

Maurice A. Langhorne and F. D. Metzger, both of Tacoma, Wash., and Randolph W. Childs, of New York City, for complainant.

Charles H. Carey and James B. Kerr, both of Portland, Or., for interveners.

CUSHMAN, District Judge. This suit is one to foreclose a mortgage, and the matter is now before the court upon complainant's motion to dismiss the complaint in intervention of certain bondholders under the mortgage. In the alternative, motion is made to strike certain portions of the complaint in intervention. Objection is also made to the interrogatories filed by the interveners.

The defendant Washington-Oregon Corporation, mortgagor, is a Washington corporation owning and heretofore operating certain electric, gas, and water plants in Washington and Oregon. Complainant is a Pennsylvania corporation. The mortgage was given to secure $5,000,000, par value, of bonds, $1,700,000 of which have been certified by the trust company, to the Washington-Oregon Corporation, all of which have been negotiated, save $5,500, face value, and of those negotiated $131,000, face value, have been retired, leaving outstanding $1,563,500, face value.

Certain property has been acquired by the Washington-Oregon Corporation, since the execution of the mortgage, which is claimed to be covered by it, and certain other property has been sold by the mortgagor and released from the mortgage. The mortgagor defaulted in the payment of interest on the bonds secured by the mortgage April 1, 1914. A majority of the bondholders elected to consider the whole debt due, and requested complainant to begin foreclosure of the mortgage. Suit for that purpose was begun July 31, 1914, and a receiver appointed for the property.

The bill in intervention asks the removal of complainant, as trustee under the mortgage, alleging unfitness upon its part to further act as such, and sets forth grounds claimed to entitle the intervening bondholders to special relief against certain majority bondholders, at whose request the trustee began foreclosure proceedings.

[1] The bill in intervention charges that the trustee is disqualified because it has failed to appoint an agent for the service of process, as required by chapter 354, Laws of Oregon for 1913. The mortgage herein sought to be foreclosed was executed in 1911. The Oregon act referred to provides:

"No foreign copartnership, firm, joint-stock company, association or corporation shall hold real or personal property in trust in this state, nor act in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any trust or fiduciary capacity therein, unless it shall have complied with all the provisions of this act: Provided, that a corporation qualified to act as a trust company in the state of its domicile may act as trustee for an issue of bonds, debentures or notes issued under the terms of a mortgage or deed of trust duly recorded in some county in this state; and provided further, that such foreign trust company shall have appointed and shall maintain an agent or attorney in this state, upon whom or upon which legal notice or process may be served; and provided further, that this act shall not apply to any foreign copartnership, firm, joint stock company, association or corporation engaged in the business of loaning money on mortgage security, which does not accept deposits or receive from citizens or residents of the state of Oregon, property or money in trust, or deposit, or for investment.  In case any foreign copartnership, firm, joint stock company, association or corporation whose name contains the word 'trust,' or whose articles of incorporation empower it to do a trust business, desires to engage in the business of loaning money on mortgage security in this state, it shall file in addition to its articles of incorporation or association, a resolution of its governing board, duly attested by its president and secretary, expressly stating that it will not receive deposits in the state of Oregon, or accept from citizens or residents of the state of Oregon, property or money, in trust for investment." General Laws of Oregon, c. 354, § 24, p. 730.

Nothing appears in the act to show an intention that it should be retroactive, and, in the absence of such a purpose clearly shown, it will be held prospective only.  Chicago Title & Trust Co. v. Bashford, 120 Wis. 281, 97 N. W. 940; Richardson v. U. S. Mtg. & T. Co., 194 Ill. 259, 62 N. E. 606; Keystone Mtg. Co. v. Howe, 89 Minn. 256, 94 N. W. 723; Commonwealth v. Danville, 207 Pa. 302, 56 Atl. 873; 13 Am. & Eng. Encyc. Law, 881, § 14.  In the case of Farmers' Loan & Trust Co. v. Lake Street Elevated Railway Co., 173 Ill. 439, 51 N. E. 55, the trustee was held not eligible and subject to removal when, *subsequent* to the passage of an Illinois statute providing for the deposit of bonds to a certain amount to the state, it accepted a deed of trust to property in that state without complying with such act.

[2] It is not alleged that the complainant has accepted deposits or received, from citizens or residents of the state of Oregon, property or money in trust, or deposit, or for investment, without which conditions the act, by its terms, would be inapplicable.

[3] It is contended that the trustee is disqualified by reason of the fact that it has consented to act with certain bondholders, conceded to represent over $1,000,000, par value, of the outstanding bonds, in the foreclosure proceedings and contemplated reorganization of the mortgagor and its property.  The bill alleges that a bondholders' committee has been selected by such majority, composed of four men, two of whom are trustees of the mortgagor and stockholders therein.  The bondholders' agreement contains, among others, the following provisions:

"The company has made default in the payment of the interest on the bonds. The depositors are accordingly desirous of co-operating for mutual protection. This can most effectually be done by so depositing their bonds with the committee that the title thereto shall pass to the committee as trustees for the depositors, with the powers and subject to the restrictions hereinafter stated.

"The depositors, each for himself, but not for others, or any of them, agree with each other and with the committee as follows:   *   *   *

"The committee may limit the time within which, and fix the conditions upon which, deposits may be made hereunder, and may extend the time so limited, and modify the conditions so fixed, and, either generally or in special

instances, may, in its discretion and upon such conditions as it may prescribe, accept deposits after the time limited for the deposit of bonds has expired.

"For each such deposit there shall be issued by or on behalf of the depositary to each depositor a certificate of deposit representing the bonds and coupons so deposited. The form of said certificates shall be substantially as is set forth in Schedule A. The deposit of bonds and the acceptance of a certificate of deposit therefor shall have the same force and effect as though the depositor had in fact subscribed his name to this agreement. Pending the preparation of forms of certificates of deposit, temporary certificates of deposit may be issued in such form as the committee may approve. Every certificate of deposit shall show whether or not the coupon or coupons maturing April 1, 1914, were deposited with the bond or bonds for which it was issued. * * *

"Second. The committee, by virtue of the deposit of any bond under the terms hereof, shall be irrevocably invested as trustees with the legal title thereto. The powers of the committee as such trustees shall include all the powers of owners, subject to the restrictions herein expressed. An enumeration of specific powers is contained in a schedule hereto annexed, made a part of this agreement, and marked 'Schedule B.' Such enumeration of specific powers shall not be deemed to limit the generality of the powers hereinbefore granted."

"The committee shall have authority to instruct the trustee or trustees under any mortgage under which any such bonds have been issued, from time to time, to sell, or refrain from selling, any of the property covered by any of such mortgages; * * * to give such directions to trustees or others, execute such papers, and do such acts, whether under the mortgage or any other instrument, or otherwise, as the committee may deem advisable in order most effectually to secure or promote the benefit of, or conserve the security for the payment of, the bonds, or to collect and enforce the payment of principal and interest of the deposited bonds. * * *

"The committee assumes no obligation, legal or equitable, expressed or implied, to any holder of bonds who shall not, within the periods limited by the committee, deposit his bonds hereunder, or to any other person whomsoever than the holders of certificates of deposit issued in accordance with the terms of this agreement."

"The depositary shall be bound to exercise only reasonable care in the safe-keeping of the deposited bonds or other securities or property deposited with it hereunder, and to deal therewith in accordance with the directions of the committee; and the directions of the committee shall be a complete justification of any action or omission to act of the depositary."

The form of certificate agreed to contained the following provision:

"The holder hereof assents to and is bound by the provisions of said agreement by receiving this certificate, and is entitled to receive all the securities, benefits, and advantages to which the depositor of such bond is or may become entitled pursuant to the provisions of said agreement."

The interveners complain that complainant, by accepting the deposits of bonds and issuing the certificates provided for in the bondholders' agreement to the depositing bondholders, has disqualified itself as trustee under the mortgage; that thereby it has assumed duties inconsistent with those obligations which it undertook to all of the bondholders under the mortgage. The mortgage itself provides:

Article VII: "* * * In case such default shall continue for three (3) months, then and in any such case, if the holders of a majority in value of the outstanding bonds hereby secured shall so elect and notify in writing Washington-Oregon Corporation, its successors or assigns, and trustee, the whole principal of all the bonds hereby secured shall thereupon be declared in writing by trustee to be, and shall immediately become, due and payable, and it shall be the duty of trustee, upon request in writing, signed by the holders of a majority in value of said bonds then outstanding, and upon being

indemnified to its satisfaction, to institute proper proceedings at law or in equity to enforce the lien hereby created.

"The principal of the bonds secured hereby having become due at maturity, or as in this article provided, it shall be lawful for trustee, after entry as in article V above provided, or without entry, to proceed to sell at public auction unto the highest bidder all and singular the property and franchises hereby mortgaged that shall then be subject to the lien, operation, and effect of this indenture, with the appurtenances, and all benefit and equity of redemption of Washington-Oregon Corporation, its successors or assigns, therein. * * *"

Article VIII: " * * * And it is expressly understood and agreed that every right of action, whether at law or in equity, upon the said bonds or coupons thereto attached, as well as under this mortgage, shall be vested exclusively in trustee, and that no suit or proceeding for the foreclosure of this mortgage shall be instituted or prosecuted by the holder or holders of any bonds or coupons of the issue secured hereby until after trustee shall have been requested in writing by the holders of a majority of said bonds then outstanding to take such action and an offer of reasonable indemnity shall have been made to trustee, and it shall have refused or failed to comply with such request within thirty (30) days after the same shall have been made, nor shall any action of trustee, or of the bondholders hereunder, or both, in waiving any default, extend to or be taken to affect any subsequent default or to impair any rights arising thereunder, as herein provided."

Article IX: "At any sale or sales of the aforesaid property hereby mortgaged, or any part thereof, whether made by virtue of any power herein granted or by judicial authority, trustee may, and upon a written request from the holders of a majority of the bonds hereby secured and then outstanding trustee shall, bid for and purchase, or cause to be bid for and purchased, the same for and in behalf of all the holders of the bonds hereby secured and then outstanding, in the proportion of the respective interests of such bondholders, at a price not exceeding the whole amount then secured by said mortgage and the expenses of such sale or sales."

It is not made to appear that the trustee, by so becoming the depositary of bonds of those entering into the bondholders' agreement, has any further surrendered itself and the control of its discretion to the majority bondholders than it had already done under the mortgage. It does not appear that the trustee has been guilty of, or is threatening, any breach of duty owed by it to the bondholders.

[4, 5] The provision that the depositary, under the bondholders' agreement, "shall be bound to exercise only reasonable care in the safe-keeping of the deposited bonds" does not touch the trustee in any of its duties under the mortgage. The provision:

"The committee assumes no obligation, legal or equitable, expressed or implied, to any holder of bonds who shall not, within the periods limited by the committee, deposit his bonds hereunder, or to any other person whomsoever than the holders of certificates of deposit issued in accordance with the terms of this agreement"

—contemplates only that, by the bondholders' agreement no new obligations were "assumed" or cast upon the men composing the committee to any bondholders not depositing their bonds. It cannot be said that, by this provision, it was meant to free the members of the committee of the bond depositors, or the trust company, of any obligation under the mortgage, or growing out of it.

[6] Concerning the power given the committee to instruct the trustee by the provisions of the bondholders' agreement quoted above, when it is considered how unwieldly would be a body composed of a majority

of the bondholders under such a mortgage, how unsatisfactory and prolonged would be the transaction of any business, the separate steps of which must be submitted to and approved by the individuals of such majority, it is clear that the rule forbidding the delegation of authority by a trustee, who is, at least in part, selected on account of the greater facility to be accomplished in the dispatch of any business, should not be extended to forbid the majority of bondholders delegating to a committee the power to give necessary instructions to the trustee. To warrant such a holding, it would have to be made to appear that such was the intention, by unequivocal, positive, and convincing terms, and not by implication.

By the bondholders' agreement, title to the bonds was vested in the committee. The committee became the bondholders, and so far as the bondholders not parties to that agreement are concerned it is doubtful whether it can properly be called a delegation of power. It is not contended that, by merely becoming a depositary of the bonds, the trustee would be disqualified; yet it is not clear how fewer obligations could have been imposed upon the trustee than by this agreement. The bondholders' agreement is simply a plan by which the majority bondholders propose to carry through the foreclosure of the mortgage and effect a reorganization of the company.

[7] In the enumeration of the powers conferred upon the committee, in the bondholders' agreement, the following are included:

"To consent to the payment of interest upon any bonds, notes, securities, or other obligations of, or claims against, the company, or of or against any allied corporation; to instruct the trustee or trustees under any mortgage under which any such bonds have been issued, from time to time, to sell or refrain from selling any of the property covered by any of such mortgages."

It is contended that, by consenting to act as depositary and giving the certificates provided for to the depositors of bonds, the trust company consented to submit to the direction of the committee as to the sale of the property covered by the mortgage, and thereby disqualified itself. This is not the effect of the foregoing provision. The bondholders' agreement provided for many things besides the deposit of the bonds, and the foregoing provision does not touch the trust company in a duty devolving upon it as a depositary under the agreement, but is rather the delegation to the committee by the depositing bondholders of the power to consent and instruct for them.

There is nothing to justify the contention that, in so far as instructions to sell the property covered by the mortgage are concerned, the trustee was obligating itself to follow such instructions. Rather is such a construction negatived by the provision in the agreement that the depositary should be bound only to reasonable care in safe-keeping the deposited bonds and to dealing therewith in accordance with the directions of the committee. The sale of the property cannot fairly be said to be included in any dealings, as depositary, with the deposited bonds.

[8] It is averred by the bill in intervention that, under the mortgage, the proceeds of any property sold by the Washington-Oregon Corporation should be applied, by the trustee, in the betterment or extension of the plant and property, or else applied towards the purchase, in

the *open market,* of the bonds secured by the mortgage; that the trustee under the mortgage, instead of paying over the proceeds of the sale of certain property covered by the mortgage to the Washington-Oregon Corporation for betterments or extensions, or else in the purchase of bonds in the open market, induced by the trustees of the Washington-Oregon Corporation and others, used such proceeds in the purchase, not in the open market, of bonds held by the trustees of the company and others associated with them.

If the duty of the trustee under the mortgage was clearly such as is claimed by interveners, and the trustee used such proceeds in the purchase of bonds from trustees of the mortgagor, at a price substantially in advance of the market price, there would be a grave question but that the complainant had not made such a gross mistake as to show its unfitness. The provisions of the mortgage covering the disposition of the proceeds realized from the property covered by the mortgage are:

"2. Washington-Oregon Corporation shall have the further right at all times, provided no default has been made as aforesaid, to convey or exchange freed from the incumbrances and trusts hereof all or any of the real estate now held, or which shall hereafter be acquired, by it, which shall no longer be either useful or necessary in the proper and judicious management and maintenance of its business or of the property hereby conveyed, or shall no longer be necessary or expedient to be retained in connection with the business of Washington-Oregon Corporation (except such as is set out in subdivision 3 hereof). * * * But any property so taken in exchange, if such there be, shall forthwith become and be liable under this mortgage as if the same had been originally included herein; and the net proceeds of such real estate so released (if sold) shall be paid over and assigned by Washington-Oregon Corporation to trustee, and shall be applied by trustee with all convenient speed at the election of Washington-Oregon Corporation, as follows: Such proceeds (except the proceeds of sale of such property as is hereinafter designated in subdivision 3 hereof) and the proceeds of all property subject to this indenture taken by the exercise of the power of eminent domain, shall either (a) be turned over to Washington-Oregon Corporation, for application by it to the betterment or extension of the plants and property owned by it, upon presentation by Washington-Oregon Corporation of a copy of a resolution by its board of trustees, duly certified by its secretary, requesting the payment to it of such proceeds and specifying the nature of the betterments or extensions of the plants and property above mentioned, and certifying that the value of such betterments or extensions is or will be more than the amount of such proceeds, so that the security of this mortgage shall not thereby be diminished; or else (b) shall be applied by trustee towards the purchase in open market, from time to time, and at such prices as trustee shall deem proper, and as shall be approved by Washington-Oregon Corporation of one or more of the bonds hereby secured; and all bonds so purchased and the coupons thereto appertaining shall be immediately canceled, and shall cease to be entitled to the benefit of the security hereby provided. It shall be no part of the duty of trustee to see to the application by Washington-Oregon Corporation of the proceeds of any property released by trustee as herein provided, or to determine whether the title to any property taken by Washington-Oregon Corporation in exchange for property released from the lien of this mortgage is a good title, or to determine whether the said property is subject to any liens, incumbrances, or other charges prior to this mortgage.

"3. Washington-Oregon Corporation shall have the further right at all times, provided no default has been made, as aforesaid, to convey, freed from the incumbrances and trusts hereof, any of its plants or systems for the generation of gas or electricity, and the distributing system appurtenant thereto, or any of its plants or systems for the supply and distribution of water, or any of its urban or interurban railway systems, and to assign the franchises

appertaining thereto, and the trustee is hereby expressly authorized to release, under its seal, from the operation and effect of this mortgage any property so sold or assigned in the same manner as set out in subdivision 2 of this article. The proceeds of such sale shall be applied only to the purchase or redemption and cancellation of outstanding bonds secured hereby: Provided, however, that there shall be purchased or redeemed and canceled at least such proportion of the outstanding bonds secured hereby as the net earnings from operation of such plant and system so sold for the fiscal year preceding such sale shall bear to the total net earnings from the operation of said Washington-Oregon Corporation for such year: Provided, however, trustee may require, before executing such release, the certificate of a chartered accountant to be selected by trustee, exhibiting and certifying as correct the net earnings of the plant or system, the sale whereof is contemplated, and the net earnings of Washington-Oregon Corporation for such fiscal year: Provided, also, that before executing such release trustee may require the certificate of a competent engineer to be selected by trustee, showing that the price for which it is purposed to sell such plant or system is fair and adequate."

The money invested by the trustee in the bonds was realized from the sale of a water plant at Centralia and a gas plant at Vancouver. The investment of the proceeds from such sales would, therefore, rather be controlled by section 3 than section 2, above quoted, which latter (section 2) contains the provision claimed by interveners to have been violated by the trustee.

Though it is conceded that this would, ordinarily, be true, yet it is contended that section 2, despite the character of the property, applies, so far as the sale of the water plant at Centralia is concerned, because that sale grew out of condemnation proceedings in the exercise of the power of eminent domain by the city of Centralia, for its acquisition. Section 2, describing such proceeds as are covered by its provisions, reads:

"And the proceeds of all property subject to this indenture taken by the exercise of the power of eminent domain."

And it excepts from its application property described in section 3. It is true that, after the express recital of such exception, the provision for the disposal of the proceeds of the property taken in the exercise of the power of eminent domain is inserted; but this fact alone, in the absence of any apparent or suggested reason to deny the effect of the exception in the latter class of property, will not justify a holding that the exception was not meant to apply to all property enumerated in section 2.

No reason appears for making a different disposition of the proceeds realized from the Centralia water plant, if it was sold to the city as the result, simply, of negotiations, than where such proceeds were obtained by reason of the plant being "taken" by the city in the exercise of its power of eminent domain. It rather appears, as the eminent domain provision is associated with those proceeds derived from the sale of real estate "which shall no longer be either useful or necessary in the proper and judicious management and maintenance of its business or of the property hereby conveyed, or shall no longer be necessary or expedient to be retained in connection with the business of Washington-Oregon Corporation," that some minor taking of property —the taking of some part of a plant, or system, as might often occur—

rather was in contemplation than the taking of an entire water plant or system.

[9] In this manner can both provisions be given harmonious and reasonable effect. Even were this not the correct construction of the contract, in view of the fact that, at most, it is doubtful which provision would be applicable, the trustee will not be held to be disqualified for such mistake—not gross, and where fraud is not shown—especially where, as here, the trustee acted under the section apparently affording the bondholders the greatest protection, in that it provides that:

"There shall be purchased or redeemed and canceled at least such proportion of the outstanding bonds secured hereby as the net earnings from operation of such plant and system so sold for the fiscal year preceding such sale shall bear to the total net earnings from the operation of said Washington-Oregon Corporation for such year."

[10]. The bill in intervention has not alleged that such bonds could have been obtained upon the open market, or that an excessive price was paid for them, or that any request was made to the trustee for the proceeds by the mortgagor, to be used in betterments or extensions.

[11] By the certificate provided for, the trust company certifies that the certificate holder is the individual, bound by the terms of, and entitled to the advantages accruing to, the depositors of certain described bonds under the agreement. It is, in effect, an identification of the individual affected by the agreement, and not an undertaking that such individual shall receive the benefits of that agreement beyond the safe-keeping by the trustee of the deposited bonds and the dealing with them, while so kept by it, as directed by the bondholders' committee, under the terms of the agreement.

The main and controlling purpose of the bondholders' agreement is to confer such power upon the committee by the bondholders as to authorize it to act effectually and to protect the committee and those dealing with it against the claims of bondholders signing the agreement. To that end it is provided that the direction of the committee to act shall be complete justification.

[12] The legal title to the bonds had passed to the Committee. As long as the depositary used ordinary care to keep the bonds and deal with them as the committee—the legal owner—directed, it was not liable.

[13] The agreement that the trust company should deal with the deposited bonds in accordance with the directions of the committee cannot be said to fairly contemplate any broadening of the duties of the depositary trust company. This agreement provides for a registration of the certificates to be issued by the trust company to the depositing bondholders, in order to facilitate the transfer of such certificates, subject to terms of the bondholders' agreement, and necessarily implies, by such deposit, the ultimate surrender of the bonds and their production when necessary.

This provision of the agreement, fairly construed, only contemplates that, in dealing as such depositary, if the trust company deals according to the direction of the committee, its duty is performed, and not that it is bound to make such use of these bonds as the committee di-

rects, without regard to the duties specifically devolving on it, as depositary, under the bondholders' agreement, and in violation of its duties as trustee under the mortgage.

Trusts are always capable of being fraudulently exercised; but, by reason of that fact alone, fraud will not be presumed in the exercise of trust powers. Fraud is not to be inferred in the discharge of the trust under the bondholders' agreement any sooner than in the exercise of the trust powers under the mortgage. No analogy exists between such a situation as the foregoing and that found in any of the cases cited by interveners.

In Savage v. Gould, 60 How. Prac. (N. Y.) 234, the trustee had delegated the management of the trust estate to his law partner, who manipulated it for his own benefit. A number of cases are cited where the trustee under one mortgage is held to be disqualified by accepting duties as trustee under a second mortgage. In Investment Registry v. Chicago & M. Elec. R. Co. (D. C.) 213 Fed. 492, a mortgage trustee also held a number of bonds secured by the mortgage, as security for collateral notes. In American Tube & Iron Co. v. Kentucky Southern Oil & Gas Co. (C. C.) 51 Fed. 826, the mortgage trustee accepted a deed of general assignment of the mortgagor's property for the benefit of all of his creditors, which included the mortgaged property.

In such cases as the foregoing the duties devolving upon the trustee were inconsistent, and were not in contemplation at the time the trust was created. But in the instant case the predominance of the majority of the bondholders was provided for in the mortgage itself, and, beyond such powers given to the majority, their interest and that of the minority are the same.

No sufficient showing has been made to warrant the removal of the trustee or a stay of foreclosure proceedings while the interveners prosecute an independent suit seeking the removal of the trustee. Land Title & Trust Co. v. Asphalt Co. of America, 127 Fed. 1, 62 C. C. A. 23; Continental & Commercial T. & S. Bank v. Allis-Chalmers Co (D. C.) 200 Fed. 600; Bowling Green Trust Co. v. Virginia P. & P. Co. (C. C.) 132 Fed. 921; McPherson v. Cox, 96 U. S. 404, 24 L. Ed. 746; Central Trust Co. v. Cincinnati, H. & D. Co. (C. C.) 169 Fed 466, 471; March v. Romare, 116 Fed. 355, 53 C. C. A. 575; Land Title & Trust Co. v. Tatnall, 132 Fed. 305, 65 C. C. A. 671; Trust Co. v. Norfolk, etc. (C. C.) 174 Fed. 269.

In the situations that hereafter arise in the course of this proceeding—many of which may not now be foreseen—if it becomes apparent that the trustee has assumed obligations growing out of the bondholders' agreement, inconsistent with those devolving upon it under the mortgage, or that it is making fraudulent use of the powers intrusted to it, it will then be time to consider whether this proceeding is one in which to determine whether the trustee should be removed, or whether those complaining of the trustee will be relegated to an independent suit.

[14] The interveners' bill alleges that members of the bondholders' committee and depositing bondholders are holders of unpaid stock in the mortgagor company. A prayer is made that the amounts so due

for unpaid stock be set off against the bonds held by such delinquent holders of stock. It was held by this court in Mississippi Valley Trust Co. v. Washington N. R. Co. (D. C.) 212 Fed. 776, that:

"Where the proceeds of corporate mortgage bonds were misappropriated or wrongfully diverted, a subsequent mortgagee could not rely on the misappropriation or wrongful diversion as a payment (or offset), unless the mortgagors had asked that the diversion or misappropriation should be applied as a payment."

The same general principle is applicable in the present case. If there is a liability, as alleged, for unpaid stock, the Washington-Oregon Corporation, mortgagor, is the party interested who is entitled to recover it. The general creditors are likewise interested in the application of any amounts recovered on such account. One bondholder will not be allowed, in this way, to better the security for his claim, already preferred, over the general creditors. Land Title & Trust Co. v. Asphalt Co. of America, 127 Fed. 1, 13, 62 C. C. A. 23; Land Title & Trust Co. v. Tatnall, 132 Fed. 305, 65 C. C. A. 671; Continental & Commercial T. & S. Bank v. Allis-Chalmers Co. (D. C.) 200 Fed. 600; Cook on Corporations (6th Ed.) § 848 et seq.

[15] The following provisions are found in the mortgage:

"No recourse shall be had for the payment of the principal or interest of this bond to stockholders, officers, or trustees of said Washington-Oregon Corporation, either directly or indirectly, by virtue of any statute or by enforcement of any assessment or otherwise, and any and all personal liability of the stockholders, officers, or trustees of said Washington-Oregon Corporation in respect to said bonds is hereby expressly waived and released by every holder hereof."

"For the debt and bonds secured hereby Washington-Oregon Corporation is liable in personam, and any deficiency, after exhausting the mortgage security, may be enforced against Washington-Oregon Corporation, but not against its officers, trustees, or stockholders individually; and it is expressly agreed between the parties hereto, and by every person who shall take or hold any bond or bonds issued hereunder, that no persons who are now, or who may hereafter become officers, trustees, or stockholders of Washington-Oregon Corporation, shall in any wise be held liable for the payment of either the principal or interest of the bonds secured hereby."

By the foregoing provisions, the right of the bondholders to have recourse to the stockholders, on account of their liability for unpaid stock, was waived. Grady v. Graham, 64 Wash. 436, 116 Pac. 1098, 36 L. R. A. (N. S.) 177; U. S. v. Stanford, 70 Fed. 346, 17 C. C. A. 143; Brown v. Eastern Slate Co., 134 Mass. 590. While the Washington decision might not be controlling as to rights to property in Oregon, yet the reasoning of these authorities alone warrants the holding.

The laws of Oregon provide:

"All sales of stock, whether voluntary or otherwise, transfer to the purchaser all rights of the original holder or person from whom the same is purchased, and subject such purchaser to the payment of any unpaid balance due, or to become due, on such stock." Lord's Oregon Laws, § 6696.

And its Constitution provides:

"The stockholders of all corporations and joint-stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid, and no more." Const. art. 11, § 3.

It is not apparent that these provisions would in any way affect a waiver by contract of the bondholders' right to resort to such stock liability.

[16] The interveners' bill avers that bonds held by members of the bondholders' committee and other majority bondholders were issued without consideration and are invalid. The interveners contend:

"The authorities which have already been cited hold, among other things, that although, because of the rule of convenience, bondholders will be considered to be represented by a trustee when their interests are common, yet when a controversy exists between the bondholders, this rule of convenience must give way, and the real parties in interest must be admitted to wage their controversy before the court."

Such allegations are not sufficient to warrant the staying of foreclosure proceedings until the amount and validity of the outstanding bonds have been determined. Land Title & Trust Co. v. Tatnall, 132 Fed. 305, 65 C. C. A. 671; Merc. Trust Co. v. U. S. Shipbuilding Co. et al. (C. C.) 130 Fed. 725; Central Trust Co. v. Cincinnati, etc., Ry. Co. (C. C.) 169 Fed. 466; Trust Co. v. Norfolk, etc., R. R. Co., 174 Fed. 269; Central Trust Co. v. C., H. & D. Ry. Co. (C. C.) 169 Fed. 470. In Central Trust Co. of New York v. California, etc., R. R. (C. C.) 110 Fed. 70, at page 76, opinion by Judge Morrow—in which case intervention was allowed—it is said:

"This need not, however, delay the entering of a decree of foreclosure. It is not necessary at this stage of the proceedings to determine as a finality the ownership of the bonds in question. It is only necessary that there shall appear that there has been a default in their payment, and the amount of that default."

In the last case referred to, and in Farmers' Loan & Trust Co. v. San Diego Street Car Co. (C. C.) 45 Fed. 518, opinion by Judge Ross, also in Richardson's Executor v. Green, 133 U. S. 30, 33 L. Ed. 516,[1] intervention appears to have been permitted prior to decree, but it does not appear to have been opposed.

The mortgage contains the following provisions:

The property shall be held in trust "for the equal pro rata benefit and security of each and every the persons or corporations who may be or become the holders of said bonds, without preference, priority, or distinction, as to lien or otherwise, of any over or from the other, so that each and all of said bonds issued or to be issued in accordance with the terms hereof shall have the same right, lien, and privileges under this Indenture of Mortgage, and shall be equally secured hereby, with the same effect as if the same had all been made, issued, and negotiated simultaneously on the date hereof."

Having concluded that the question of the right of interveners to litigate the question of the invalidity of certain bonds secured should not be allowed prior to the decree of foreclosure, it is not now necessary to determine whether the interveners are barred by the foregoing provisions of the mortgage from asserting such claim.

[17] The bill in intervention avers that the solicitor for the complainant, upon whose application a receiver was appointed, was not merely the representative of complainant, but also undertook to represent, and held written authority to represent, the mortgagor, a copartnership, one of whose members was a member of a committee of bondholders under a second mortgage; also authority to represent the

[1] 10 Sup. Ct. 280.

trustee under the second mortgage and the committee of consolidated mortgage bondholders under the first mortgage, and of holders of stock in the mortgagor, and the committee of second mortgage bondholders and of certain general creditors of the mortgagor. These allegations merely show that the trustee is acting in conjunction with other interested parties, and it does not show that the object of such concerted action is the injury of the interveners. In the absence of acts hostile to interveners, it is more reasonable to presume that the saving of expense in litigation and prevention of deterioration of the property, consequent upon an extended controversy in the courts, was alone the object sought.

[13] The bill in intervention alleges that the trustees of the mortgagor and others, including members of a partnership to which certain of the majority bondholders belong, have conspired to cause the mortgaged property to be sold, free and clear of the claims of the intervening bondholders and other creditors, for a sum much less than its actual value, and for a sum insufficient to pay in full the claims of the intervening bondholders, and insufficient to pay any sum whatever on the claims of general creditors. In support of this allegation, it is averred that the books of the Washington-Oregon Corporation, in violation of the state statute, have been and are kept outside of the state.

While this might be a sufficient allegation to warrant a stay of proceedings until such time as the books are returned to the state, or until interveners had an opportunity to advise themselves of the exact nature of the dealings had between the trustee, majority bondholders, and the mortgagor, as disclosed by such books, yet the allegations as to fraud and conspiracy are too vague, general, and indefinite to warrant intervention on behalf of these bondholders.

As the terms of sale and distribution of the fund realized are, in practice, fixed by the foreclosure decree, and the interveners have, subject to the foregoing reservation, the ultimate right, before distribution, to attack the validity of such bonds as they assert were issued without consideration, it is held that the bill in intervention be not dismissed, but that it be considered in support of interveners' right to be heard at the time of the settlement of the decree.

In the case of Mercantile Trust Co. v. United States Shipbuilding Co. (C. C.) 130 Fed. 725, where intervention was denied—relying on Dickerman v. Northern Trust Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423—a different situation appeared than in the present case. In denying the intervention, the court said:

"The foreclosure case has progressed to the point where, in the usual course of procedure, a decree for the sale of the mortgaged premises should be made. A draft of such decree was submitted to the court with the petition. * * * The decree of sale now presented to the court has been carefully framed so as to secure to her the fullest opportunity to contest, at the proper time, the rights of any other bondholder. This is not the proper time for instituting such a contest, and the petition must be denied." 130 Fed. at pages 725, 726.

All of the prayer to the complaint of the intervening bondholders will be stricken, except the first unnumbered paragraph. All of the interrogatories are likewise stricken.